

FILED by ___MM___ D.C.

Jan 12, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **23-60006-CR-SMITH/VALLE**

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)

**UNITED STATES OF AMERICA**

vs.

**CIMOYNE ALVES,**

　　　　Defendant.
_____/

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

**Requirements to Become a Registered Nurse or Licensed Practical Nurse**

1.　　　The purpose of a professional nursing license was to protect the public from harm by setting minimum qualifications and competencies for safe entry-level practitioners. Nursing was regulated because it was one of the health professions that poses a risk of harm to the public if practiced by someone who is unprepared and/or incompetent. Boards of Nursing achieved this mission by establishing the standards for safe nursing care and issuing licenses to practice nursing.

2.　　　According to the National Council of State Boards of Nursing, components of licensure to be a Registered Nurse (RN) or a Licensed Practical/Vocational Nurse (LPN/VN) included verification of graduation from an approved pre-licensure nursing program, verification of successful completion of the National Council Licensure Examination (NCLEX) also known as

"the board exam" or "the boards," and in some states a criminal background check.

3.  The Nurse Licensure Compact increased access to care while maintaining public protection at the state level. Under the Nurse Licensure Compact, nurses can practice in other Nurse Licensure Compact states, without having to obtain additional licenses. Approximately 39 states, including Florida, have enacted Nurse Licensure Compact legislation. The Nurse Licensure Compact requires that every RN or LPN/VN graduate from a board-approved RN or LPN/VN prelicensure education program. Each state's nursing board governed the approval of nursing education programs.

4.  The State of Florida enacted the Nurse Practice Act to ensure that every nurse practicing in Florida meets minimum requirements for safe practice. Fla. Stat. §§ 464.001-464.027. The Florida Board of Nursing was both a regulatory board and a state government agency legally responsible for enforcing the state's Nurse Practice Act. The Florida Board of Nursing was responsible for establishing standards for safe nursing care and issuing licenses to practice nursing. To do so, it oversaw education requirements and rules for licensure in Florida. Among these requirements was that any person desiring to be licensed as an RN or LPN/VN had to complete the requirements for graduation from an approved nursing program, or its equivalent as determined by the board, for the preparation of registered nurses or licensed practical nurses, whichever was applicable. For graduates of an approved program equivalent, an applicant seeking certification to take the licensure examination had to submit an official transcript or equivalent documentation which identified all courses completed that met graduation requirements.

5.  According to Florida's Nurse Practice Act, an approved pre-licensure program's curriculum must consist of:

    a.  At least fifty percent clinical training for a practical nursing education program, an

associate degree professional nursing program, or a professional diploma nursing education program.

      b.     The professional or practical nursing curriculum plan must document clinical experience and theoretical instruction in medical, surgical, obstetric, pediatric, and geriatric nursing. A professional nursing curriculum plan shall also document clinical experience and theoretical instruction in psychiatric nursing. Each curriculum plan must document clinical training experience in appropriate settings that include, but are not limited to, acute care, long-term care, and community settings.

      c.     The professional or practical nursing education program provides theoretical instruction and clinical application in personal, family, and community health concepts; nutrition; human growth and development throughout the life span; body structure and function; interpersonal relationship skills; mental health concepts; pharmacology and administration of medications; and legal aspects of practice. A professional nursing education program must also provide theoretical instruction and clinical application in interpersonal relationships and leadership skills; professional role and function; and health teaching and counseling skills.

### Defendant and Related Individuals and Entities

6.     Med-Life Institute WPB, LLC (Med-Life) was a Florida limited liability company licensed by the Florida Board of Education to provide a nursing education program.

7.     Palm Beach School of Nursing, LLC (Palm Beach School of Nursing) was a Florida limited liability company located in Palm Beach County, Florida. Palm Beach School of Nursing operated under the license that was issued to Med-Life and later transferred to Palm Beach School of Nursing. According to Palm Beach School of Nursing's Program Outline, it offered an Associate in Science degree, and the objective of the program was to "prepare the student to meet

the requirements of the Florida Department of Health and the Florida Board of Nursing for Registered Nurse Education and meet eligibility for licensing exam (NCLEX-RN) in order to work as a Registered Nurse in a variety of settings in a safe and effective manner."

8. Quisqueya School of Nursing LLC, d/b/a Sunshine Academy (Sunshine Academy) was a Florida limited liability company located in Palm Beach County, Florida. Sunshine Academy was licensed by the Florida Board of Education to provide a nursing education program. According to Sunshine Academy's Program Outline, it offered a practical nursing program, and the objective of the program was to "prepare student[s] to provide nursing care to clients in hospitals, nursing homes, home healthcare agencies, and other areas in healthcare. Upon satisfactory completion of the program the graduate is eligible to apply to sit for the National Council Licensure Examination for Practical Nursing."

9. Quisqueya Health Care Academy, LLC (Quisqueya) was a Florida limited liability company located in Palm Beach County, Florida. Quisqueya operated under the same license that had been previously issued to Sunshine Academy. According to Quisqueya's Program Outline, it offered a practical nursing program, and the objective of the program was to "prepare student[s] to provide nursing care to clients in hospitals, nursing homes, home healthcare agencies, and other areas in healthcare. Upon satisfactory completion of the program the graduate is eligible to apply to sit for the National Council Licensure Examination for Practical Nursing."

10. Health and Nursing Education Services, Inc. was a Rhode Island corporation.

11. Defendant **CIMOYNE ALVES**, a resident of Lincoln, Rhode Island, owned and operated Health and Nursing Education Services, Inc.

12. Johanah Napoleon, a resident of Palm Beach County, Florida, was the owner of Med-Life, Palm Beach School of Nursing, Sunshine Academy, and Quisqueya.

13. Co-conspirator 1, a resident of Broward County, Florida, was the Director of Student Services and the Registrar of Palm Beach School of Nursing.

14. Co-conspirator 2 obtained a diploma and transcript issued by Palm Beach School of Nursing purporting to show that he/she attended Palm Beach School of Nursing and completed the necessary courses and/or clinicals to obtain an Associate Degree in Nursing diploma.

15. Health Care Provider-1 (HCP-1) was a home health facility located in California that employed licensed nurses to care for homebound patients, including Medicare patients.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2. Beginning at least as early as in or around January of 2019, and continuing through in or around July of 2021, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**CIMOYNE ALVES,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Johanah Napoleon, co-conspirator 1, co-conspirator 2, and others known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign

5

commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.  It was the purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting and recruiting co-conspirators, via interstate wire communications, seeking nursing credentials to obtain employment as an RN or LPN/VN in the health care field; (b) creating and distributing, via interstate wire communications, false and fraudulent diplomas and transcripts for co-conspirators seeking RN or LPN/VN licensure and employment in the health care field; (c) using the false and fraudulent documents to obtain employment, pay, and other benefits in the health care field; (d) concealing the use of fraudulent documents used to obtain employment in the health care field; and (e) using proceeds of the conspiracy for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.  **CIMOYNE ALVES** and others, via interstate wire communications, solicited and recruited co-conspirators, including co-conspirator 2, and others, seeking nursing credentials and employment as an RN or LPN/VN in the health care field.

5.  **CIMOYNE ALVES,** Johanah Napoleon, co-conspirator 1, and others sent and caused others to send, via interstate wire communications, information used to create false and fraudulent transcripts and diplomas from Palm Beach School of Nursing and Quisqueya.

6.   **CIMOYNE ALVES,** Johanah Napoleon, co-conspirator 1, and others created and distributed, and caused to be created and distributed, via interstate wire communications, false and fraudulent transcripts and diplomas to co-conspirators, including co-conspirator 2 and others, falsely and fraudulently representing that the co-conspirators attended Palm Beach School of Nursing or Quisqueya in Florida and completed the necessary courses and/or clinicals to obtain RN or LPN/VN diplomas, when in fact the co-conspirators had never completed the necessary courses and/or clinicals.

7.   In furtherance of the conspiracy, co-conspirators, including co-conspirator 2 and others, used the false and fraudulent diplomas and transcripts and other records created and distributed, and caused to be created and distributed, by **CIMOYNE ALVES,** Johanah Napoleon, and co-conspirator 1 to obtain licensure as an RN or LPN/VN in various states including California.

8.   Co-conspirators, including co-conspirator 2 and others, used the false and fraudulent diplomas, transcripts, and other documents created and distributed, and caused to be created and distributed, by **CIMOYNE ALVES,** Johanah Napoleon, co-conspirator 1, and others, to fraudulently obtain employment and benefits as an RN or LPN/VN at various unwitting health care providers throughout the country, including HCP-1. Those health care providers hired and paid salaries, wages, and other benefits to the co-conspirators based on their fraudulent credentials.

9.   **CIMOYNE ALVES,** Johanah Napoleon, co-conspirator 1, co-conspirator 2 and others used the proceeds of the conspiracy for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
## Wire Fraud
## (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2. Beginning at least as early as in or around January of 2019, and continuing through in or around July of 2021, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**CIMOYNE ALVES,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Scheme and Artifice

3. It was a purpose of the scheme and artifice for the defendant and her accomplices to unlawfully enrich themselves by, among other things: (a) soliciting and recruiting accomplices, via interstate wire communications, seeking nursing credentials to obtain employment as an RN or LPN/VN in the health care field; (b) creating and distributing, via interstate wire communications, false and fraudulent diplomas and transcripts for accomplices seeking RN and LPN/VN licensure and employment in the health care field; (c) using the false and fraudulent documents to obtain employment, pay, and other benefits in the health care field; (d) concealing

8

the use of fraudulent documents used to obtain employment in the health care field; and (e) using the proceeds of the fraud for their personal use and benefit, the use and benefit of others, and to further the fraud.

### The Scheme and Artifice

4. Paragraphs 4 through 9 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Use of the Wires

5. On or about the dates set forth below, in the Southern District of Florida, and elsewhere, the defendant, for the purposes of executing the above-described scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds as described below:

| Count | Approx. Date | Description of Wire Transmission |
|---|---|---|
| 2 | 06/24/2019 | Text message via interstate wire from **CIMOYNE ALVES** to Johanah Napoleon in the Southern District of Florida stating that **ALVES** will send ten students for orientation. |
| 3 | 01/08/2020 | Email via interstate wire from **CIMOYNE ALVES** to co-conspirator 1 in the Southern District of Florida providing start dates and end dates for use in the creation of student transcripts. |
| 4 | 07/20/2020 | Email via interstate wire from **CIMOYNE ALVES** to co-conspirator 1 in the Southern District of Florida requesting that co-conspirator 1 contact the New York Board of Nursing to follow-up on **ALVES'** students who were attempting to obtain nursing licensure through New York. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE
## (18 U.S.C. § 981(a)(1))

1. The allegations contained in this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **CIMOYNE ALVES**, has an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CIMOYNE ALVES,

_____/
Defendant.

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☑ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take 5 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☑ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Ruiz _____ Case No. 22-CR-60118

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
For Christopher J. Clark
Assistant United States Attorney
FLA Bar No.   588040

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __CIMOYNE ALVES_____

Case No: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross or loss for the offense

Counts # 2-4:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross or loss for the offense

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.